IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NANCY SMITH SCHROLL,

      Appellant/Cross-Appellee,

v.

STEPHEN B. SCHROLL,

      Appellee/Cross-Appellant.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-3590

_____/

Opinion filed October 6, 2017.

An appeal and cross-appeal from the Circuit Court for Santa Rosa County.
David Rimmer, Judge.

Laura E. Keene of Beroset & Keene, Pensacola, for Appellant/Cross-Appellee.

Therese A. Felth of McKenzie Law Firm, P.A., Pensacola, for Appellee/Cross-Appellant.

PER CURIAM.

      This appeal and cross appeal are taken from a final judgment of dissolution of marriage. The former wife, Nancy Smith Schroll, challenges the trial court's failure to award her sufficient permanent periodic alimony and attorney's fees and costs. The former husband, Stephen B. Schroll, attacks the trial court's valuation and

distribution of marital assets and liabilities. For the reasons that follow, we reverse in part and remand for further proceedings. In all other respects, the judgment is affirmed.

## I. Relevant Facts

After thirty-two years of marriage, Ms. Schroll petitioned for dissolution of the parties' marriage. The primary issues before the trial court were equitable distribution of the marital assets and liabilities, alimony, and attorney's fees and costs. At the time of the dissolution of marriage, the parties had acquired slightly more than $2,000,000 in assets from profits generated by their business, Storkland, a retail store specializing in the sale of baby items. The parties' assets consisted of the commercial building housing Storkland, the inventory of Storkland, multiple retirement and investment accounts, and various personalty.

Mr. Schroll was responsible for managing Storkland while Ms. Schroll would assist as a sales clerk. Mr. Schroll claimed that Storkland's sales had been steadily decreasing since 2012 due to competition from large chain stores and online retailers. He testified that during the pendency of the dissolution action, he used marital funds to pay for his and Ms. Schroll's living expenses, the cost of both parties' relocation, both parties' temporary attorneys' fees, new vehicles for both parties, and paying off the mortgage on the marital home before it was sold. He

2

further testified that he gave significant funds to one mutual daughter for her wedding and another mutual daughter for her purchase of a house.

The trial court entered a final judgment dissolving the parties' marriage and setting forth the distribution of the parties' assets. The court adopted Ms. Schroll's proposed equitable distribution schedule, which valued the marital assets as of the date of filing. Ms. Schroll was awarded assets purportedly totaling $1,222,120, and Mr. Schroll was awarded assets worth $1,274,752. The parties' marital liabilities were valued at $22,147 and attributed to Mr. Schroll. According to the equitable distribution schedule adopted by the court and incorporated into the final judgment, the parties were each awarded $1,210,015 in assets.

The court further found that there was no dissipation or waste of marital assets by Mr. Schroll. The court noted that Ms. Schroll was awarded over $1,000,000 in assets in the equitable distribution and concluded, "Although the Respondent/Husband may have the ability to pay alimony, the Court does not believe the Petitioner/Wife has a need for the same and denies the Petitioner/Wife's request for alimony." The court ordered both parties to pay their own attorneys' fees and costs.

Both parties moved for rehearing, raising each of the issues addressed in this opinion. The trial court subsequently entered an "Amendment to Final Judgment of Dissolution of Marriage," ordering Mr. Schroll to pay nominal permanent alimony

3

of $1.00 per month and vacating the equitable distribution schedule previously incorporated into the final judgment because it contained "mathematical errors." The court stated that all other provisions in the final judgment were to remain in full force and effect. The court adopted a new attached equitable distribution schedule, which indicated Ms. Schroll was awarded assets worth $1,231,633.50 and Mr. Schroll was awarded assets worth $1,253,780.50. The marital liabilities of $22,147 were again attributed to Mr. Schroll, which resulted in both parties being awarded $1,231,633.50 in assets. This appeal and cross-appeal follow.

## II.    *Equitable Distribution*

We first turn to the challenges to the trial court's equitable distribution scheme. A court's rulings on equitable distribution are reviewed for abuse of discretion. *Boutwell v. Adams,* 920 So. 2d 151, 153 (Fla. 1st DCA 2006). When distributing the marital assets and liabilities between parties, courts must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, including the factors set forth in section 61.075(1)(a)-(j), Florida Statutes (2016). *See Watson v. Watson,* 124 So. 3d 340, 342-43 (Fla. 1st DCA 2013). The date for determining the value of marital assets and the amount of marital liabilities is the date or dates as the court determines is "just and equitable under the circumstances." § 61.075(7), Fla. Stat. (2016).

4

Should it be necessary for the court to craft an unequal distribution, it must include findings to substantiate the disparity. *Watson*, 124 So. 3d at 342.

## A.      *Valuation of Money Market Accounts*

Mr. Schroll argues the trial court erred when it valued the parties' BBVA money market account and Vanguard brokerage account as of the filing date of the petition for dissolution, as those funds had been depleted for marital purposes from the date of filing, and there was no finding of intentional waste or dissipation of those assets by Mr. Schroll during the divorce proceedings. Based on the record before us, we agree.

This Court has previously held that "[s]ums that have been diminished during dissolution proceedings for purposes reasonably related to the marriage . . . should not be included in an equitable distribution scheme unless there is evidence that one spouse intentionally dissipated the asset for his or her own benefit and for a purpose unrelated to the marriage." *Ballard v. Ballard*, 158 So. 3d 641, 642-43 (Fla. 1st DCA 2014) (citing *Zvida v. Zvida,* 103 So. 3d 1052 (Fla. 4th DCA 2013)); *see also Winder v. Winder*, 152 So. 3d 836, 838 (Fla. 1st DCA 2014) (trial court abused its discretion by including dissipated funds in the equitable distribution scheme where "[t]he uncontradicted evidence shows that the dissipated funds were used to pay marital expenses while the dissolution was pending, including temporary support for the Wife"). To include dissipated assets in an equitable distribution scheme, the court

5

must make a "specific finding that the dissipation resulted from intentional misconduct." *Bateh v. Bateh*, 98 So. 3d 750, 753 (Fla. 1st DCA 2012); *see also Ballard*, 158 So. 3d at 643; *Walker v. Walker,* 85 So. 3d 553, 555 (Fla. 1st DCA 2012).

Here, the unrefuted evidence shows that during the course of the dissolution proceedings below, Mr. Shroll used funds from the parties' BBVA money market account and the Vanguard brokerage account to pay for the parties' living expenses, including attorneys' fees and costs, new vehicles for both parties, moving expenses, and paying off the mortgage on the former marital residence before it sold. By the time of the final hearing, the funds in the BBVA account had been exhausted. The Vanguard account had been reduced from $451,146, as of the date of filing, to $381,220, around the time of the final hearing. Yet, the court valued these accounts as of the date the petition for dissolution was filed. Because the court did not find any misconduct by Mr. Schroll in the dissipation of these two assets, it was an abuse of discretion to value these accounts as of the date of filing. On remand, the court should revisit the equitable distribution scheme and exclude the funds dissipated for marital purposes.

### B.    *Valuation of Investment Accounts*

Mr. Schroll further argues that the trial court reversibly erred when it valued

certain investment assets[1] as of the date of commencement of the dissolution action instead of a date closer to the final hearing because those assets had significantly declined in value during the course of litigation due to passive market forces, outside of the control of either party. While the court has the discretion to decide the valuation date of marital assets as the court determines is "just and equitable under the circumstances," without an explanation as to why the court valued these assets as of the date of filing, we are not able to determine from this record whether the court considered the decrease in value of these assets in fashioning the equitable distribution. *See Byers v. Byers,* 910 So. 2d 336 (Fla. 4th DCA 2005) (trial court abused its discretion in allocating parties' assets without accounting for passive appreciation of 401(k) account where court gave no explanation as to why it settled on date of filing as valuation date). On remand, the court should address the propriety of the valuation date of these investment assets and account for the passive changes in value in fashioning an equitable distribution award.

### C.     *Valuation/Distribution of Business Assets*

Mr. Schroll additionally alleges that the trial court abused its discretion when it awarded him the value of Storkland's inventory and the Storkland business account in the absence of evidence regarding Storkland's fair market value. In so

---

[1] These assets include the Prudential Annuity #8841, the Stifel/Protective Life #7663, Stifel /Transamerica IRA #8706, and the Stifel/Transamerica IRA #8763.

doing, Mr. Schroll contends that the court completely ignored the costs of doing business and debts belonging to Storkland. We agree to the extent that the trial court should have included Storkland's accounts payable as a marital liability as part of the equitable distribution. But we assign no fault to the court for failing to take into account the fair market value of the Storkland business in constructing the equitable distribution scheme when neither party squarely presented evidence regarding that issue to the court. *See Simmons v. Simmons*, 979 So. 2d 1063, 1066 (Fla. 1st DCA 2008) (Benton, J., dissenting) ("I agree with the majority opinion that a party who adduces no proof as to the value of property should not be heard on appeal to complain about the final judgment's failure to pluck a value out of thin air to assign to the property."). The court should revisit this issue on remand and revise the equitable distribution accordingly.

### III.    *Alimony*

Turning to Ms. Schroll's arguments on appeal, she first contends that the trial court abused its discretion in refusing to award her more than a nominal permanent alimony award and in not adequately addressing the presumption favoring the award of permanent periodic alimony in relation to the parties' long-term marriage.

In determining whether to award alimony, the trial court must make specific factual determinations with regard to the needs of the spouse requesting alimony and the ability of the other spouse to provide the necessary funds. § 61.08(2), Fla. Stat.

8

(2016); *Canakaris v. Canakaris*, 382 So. 2d 1197, 1201 (Fla. 1980). If the court finds that one spouse has an actual need for alimony and the other spouse has the ability to pay, the court must then consider "all relevant factors," including those listed in section 61.08(2), in determining the proper type and amount of alimony. Permanent alimony is designed to provide for the needs and necessities of life for a former spouse as they were established during the marriage. § 61.08(8), Fla. Stat. (2016).

In *Broemer v. Broemer*, 109 So. 3d 284 (Fla. 1st DCA 2013), this Court recognized that there is a rebuttable presumption of entitlement to permanent periodic alimony in marriages of longer than seventeen years and found that the trial court "failed to address the initial rebuttable presumption or explain why it does not apply in this case." *Id.* at 290. We concluded that remand was necessary because the lack of required findings of fact prevented us from reviewing the alimony issue in a meaningful way. *Id.* at 289.

As to the propriety of awarding nominal permanent periodic alimony, this Court has instructed, "should the trial court find it is faced with a situation where the Wife has a clear need for permanent alimony, but it is established that the Husband does not have the current ability to pay . . . a nominal award of permanent alimony would preserve the trial court's jurisdiction to revisit this matter, until there is a substantial change in the parties' respective financial circumstances." *Winder*, 152 So. 3d at 841-42 (citations omitted).

9

Here, the trial court awarded Ms. Schroll nearly $600,000 in liquid assets and approximately $600,000 worth of retirement investments. On this basis, the court concluded in the final judgment that Ms. Schroll had no need for alimony. The court's subsequent award of nominal permanent periodic alimony to Ms. Schroll in the amendment to the final judgment, without any additional findings, appears inconsistent with its earlier conclusion that she had no need for alimony and fails to address Mr. Schroll's ability – or lack thereof – to pay.

On remand, the trial court should revisit the issue of alimony and assess Ms. Schroll's potential need for permanent alimony as this Court instructed in *Broemer*, 109 So. 3d at 290, in light of any substantial alteration of the parties' financial positions upon the recalculation of the equitable distribution of assets and liabilities based on this opinion. Additionally, the court should make explicit findings regarding the Ms. Schroll's need and Mr. Schroll's ability to pay, and if the court determines that an award of alimony is proper, it should consider all relevant factors, including those set forth in section 61.08(2), when determining the proper type and amount of the award.

## IV. *Attorney's Fees*

Ms. Schroll next contends that the trial court abused its discretion in failing to award her attorney's fees. The issue of whether Ms. Schroll is entitled to attorney's fees and costs hinges upon the reallocation of the equitable distribution and whether

she is awarded permanent periodic alimony on remand. Thus, the trial court should revisit the issue of Ms. Schroll's potential entitlement to attorney's fees pursuant to section 61.16(1), Florida Statutes, based on the extent to which the parties' respective financial circumstances are altered on remand.

AFFIRMED in part; REVERSED and REMANDED in part.

WOLF, RAY, and BILBREY, JJ., CONCUR.